```
TRANSCRIPT OF PROCEEDINGS 8/2/2007                USA v. VEYS
Vol 1                                             1:06-CR-00003
```

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

```
UNITED STATES OF AMERICA,    )
                             )
          Plaintiff,         )
                             )
v.                           )
                             )
ALAN J. VEYS,                )
                             )
          Defendant.         )
_____)
Case Number 1:06-cr-00003-JWS-PMP
```

VOLUME I

TRANSCRIPT OF PROCEEDINGS (EXCERPT)

BEFORE THE HONORABLE PHILLIP M. PALLENBERG
U.S. Magistrate

Juneau, Alaska
August 2, 2007
8:13 o'clock a.m.

```
FOR THE PLAINTIFF:         MR. WAYNE D. HETTENBACH
                           Assistant U.S. Attorney
                           222 West Seventh Avenue
                           Anchorage, Alaska

FOR THE DEFENDANT:         MR. BRENT R. COLE
                           Marston & Cole
                           Attorneys at Law
                           745 G Street, Suite 502
                           Anchorage, Alaska  99501

ALSO PRESENT:              MS. SHAW
(telephonically)           (Pre-trial services)
```

Computer Matrix, LLC   Phone - 907-243-0668         jpk@gci.net
700 W. 2nd Ave., Anchorage, AK 99501   Fax   907-243-1473   sahile@gci.net

21425118-ea43-4666-87b0-711a0a0d0cb6
**Exh. B, p. 1 of 6**

TRANSCRIPT OF PROCEEDINGS 8/2/2007                USA v. VEYS
Vol 1                                             1:06-CR-00003

## Page 2

```
 1            PROCEEDINGS
 2   Media No. Unknown
 3   5:14:40
 4       THE COURT:  Thank you, Mr. Veys.  Well, the first thing I
 5   need to do is determine what guideline range is applicable.
 6   The base defense level is six.  I add two levels for pecuniary
 7   gain.  I add four levels as determined earlier for the monetary
 8   value, for a total of 12.  I deduct two for acceptance of
 9   responsibility.  That brings us to 10.  And then I have to
10   determine whether Mr. Veys is eligible for reduction for
11   playing a minor role in the offense.
12       When I look at the guidelines 3(b)1.2, it indicates that
13   this reduction is available in a case in which the defendant
14   who plays a part in committing the offense is substantially
15   less culpable than the average participant.  It talks about a
16   defendant who performs only a limited function in concerted
17   criminal activity.  Subsection 3(b) in the commentary indicates
18   that this reduction should not be available for a defendant who
19   is convicted of an offense significantly less serious than
20   warranted by his actual criminal conduct.
21       Well, Mr. Veys was originally charged with a more serious
22   felony offense.  I'm not making a finding that he's guilty of
23   the more serious offense, but I guess I do think that Mr. Veys'
24   culpability really kind of falls in the mid range of the
25   offense that he's been convicted of.  It is clear to me that
```

## Page 3

```
 1   his culpability is less than that of Mr. Jairell.  It is clear
 2   to me from the testimony of Dr. Sperbeck that he was vulnerable
 3   to Mr. Jairell's entreaties to him to assist him in this
 4   scheme, but it does seem to me from what I've heard that
 5   Mr. Jairell is the more culpable.  Mr. Jairell was the person
 6   out there doing the guiding.  It seems to me from what I've
 7   heard, and I haven't heard anything by any means, that really
 8   Mr. Jairell was the moving force behind this.  So I think his
 9   culpability is less.  I'm not sure I can make a finding though
10   that he -- that Mr. Veys is substantially less culpable, such
11   that his participation is only very minor or is only minor, so
12   I can't find that reduction.
13       Given that, that leaves the offense level at 10, which,
14   with a criminal history category of one, the applicable
15   guideline range 6 to 12 months.  That is an advisory guideline.
16   I'm not required to follow that range.  I think the guidelines
17   are intended in the post book or world to carry considerable
18   weight for sentencing courts.  I think courts should only
19   depart from those guideline ranges in rare cases and that's
20   really the difficult question for the court, is whether this is
21   one of those rare cases.
22       I place considerable weight on the testimony of Dr.
23   Sperbeck.  He is well known to the court by reputation.  He has
24   examined many hundreds of criminal defendants.  He's not
25   somebody who's gullible and likely to be taken in by a clever
```

## Page 4

```
 1   defendant who is trying to exploit the examining psychologist.
 2       I have also read all of the many letters that have come in
 3   about Mr. Veys and it's clear that he's touched a huge number
 4   of people who have come through his lodge.  He's impressed
 5   them.  I don't think somebody could generate that volume of
 6   letters without having some things going for him.
 7       As I look at what the sentence should be, Mr. Cole is
 8   right that I need to be guided by statute 33.53, factors set
 9   out in there.  I have to decide what sentence is reasonable.
10   The first of those is the nature and circumstances of the
11   offense and history and characteristics of the defendant.  I
12   have to look at the need for the sentence imposed to reflect
13   the seriousness of the offense.
14       Guiding violations are serious offenses.  I think the
15   people of Alaska expect that when the law requires a guide to
16   be present for a non-resident hunter to take Alaska's wildlife,
17   the people of Alaska take that seriously and expect that to be
18   followed and so I think it is a serious offense.
19       The second factor is the need to promote respect for the
20   law.  I am concerned that entirely probationary sentence would
21   not adequately reflect the seriousness that the people of
22   Alaska place on these guiding offenses and the need to promote
23   respect for the law.
24       People go to jail for taking the moose out of season.
25   People go to jail for taking an oversized or an undersized
```

## Page 5

```
 1   moose or taking a bear out of season and I think a commercial
 2   guiding violation that involved an entirely probationary
 3   sentence would place this at a lower level of seriousness than
 4   many other types of hunting violations, hunting and fishing
 5   violations, and I'm concerned about the message that would
 6   send.
 7       I don't think jail is necessary for Mr. Veys, but I do
 8   have concern about the other factors that the government talks
 9   about involving deterrence of others and promoting respect for
10   the law and deterring others.  I think it's possible to impose
11   a sentence that does not ruin Mr. Veys' ability to run his
12   lodge and satisfy his bankruptcy plan that allows him to stay
13   in business, but also meets the guideline range and the other
14   factors that I've just talked about.
15       So here's what I'm going to do.  I'm going to impose the
16   low end of the guideline range, six months incarceration;
17   however, the guideline allows that sentence to be satisfied
18   with a sentence of at least one month of imprisonment and the
19   balance in home detention.  What I'm going to do is I'm going
20   to require Mr. Veys to serve one month in prison.  I'm going to
21   require him to serve a period of five months of home detention.
22   I'm going to allow that home detention to be satisfied either
23   at his Washington residence or at Pybus Point Lodge.
24       Here's how I'm going to break this up.  He's to report --
25   what reporting date, Mr. Cole, would you be requesting for
```

2 (Pages 2 to 5)

Computer Matrix, LLC    Phone - 907-243-0668         jpk@gci.net
700 W. 2nd Ave., Anchorage, AK 99501    Fax    907-243-1473    sahile@gci.net

21425118-ea43-4666-87b0-711a0a0d0cb6
Exh. B, p. 2 of 6

TRANSCRIPT OF PROCEEDINGS 8/2/2007                              USA v. VEYS
Vol 1                                                           1:06-CR-00003

### Page 6

1  Mr. Veys?
2      MR. COLE:  October 1st.
3      THE COURT:  I'll order that he's to report on October 1st.
4  He's allowed to report on his own to the institution designated
5  by the probation office or the Bureau of Prisons.  He's to
6  report October 1st.  He's to serve one month.  Following that
7  period of incarceration, I will allow his period of home
8  confinement to be broken up into two sections.  He can serve
9  two months following his release from incarceration.  He may
10 have a -- which will take him to end of January.  He may have a
11 two-month break to travel to the sport shows.  During that time
12 he'll be on supervised release.  He will then have an
13 additional three months of home confinement to serve following
14 those sport shows.  He may do that at Pybus Point if he wishes
15 to do so.  The initial period is to be served in Washington.
16     During that initial two-month period of home confinement
17 he's to perform 100 hours of community work service.  He's not
18 to leave his home confinement except -- let me just find the
19 language of the guideline -- except for the purpose of
20 servicing his community work service.  I was under the
21 impression there was some language about that in the manual.
22     Ms. Shaw, can you help me to find that in the guidelines
23 manual.
24     MS. SHAW:  I'm sorry.
25     MR. COLE:  Which section are you looking for, Your Honor?

### Page 7

1      THE COURT:  I thought there was -- I'm not finding the
2  home confinement section.  I was under the impression that
3  there was some language about the conditions for which he can
4  be allowed to leave home confinement, assuming he's going to
5  need to buy groceries and those sort of things.
6      MS. SHAW:  If you look at the recommendations, it's
7  written out, Page 2.
8      MR. HETTENBACH:  Your Honor.  I believe what Your Honor is
9  looking for is at 5(f)1.2 application note one.  When an order
10 of home detention is imposed, defendant is required to be in
11 his place of residence at all times except.....
12     THE COURT:  That's what I wanted.  Thank you.  So the
13 order will read that he is required to be in his place of
14 residence at all times except for approved absences, gainful
15 employment, community services -- community service, religious
16 services, medical care, educational or training programs or
17 such other times as may be specifically authorized by his
18 probation officer.
19     While he's in Washington he is to be subject to electronic
20 monitoring.  I am of the belief that electronic monitoring is
21 not going to be available at Pybus Point Lodge.  I'm not
22 particularly concerned with him fleeing from that place because
23 it's such an isolated location.  He is only to leave Pybus
24 Point Lodge for the purposes I just outlined and, if he does
25 so, he is required to notify his probation officer immediately

### Page 8

1  upon arriving -- let's say within one hour of arriving in
2  Juneau or Petersburg, whichever community he would be going to,
3  the nearest community.  The probation officer is to know where
4  he is at all times he leaves Pybus Point Lodge and he is to
5  check in with his probation officer at least once a week while
6  he's there.  Do you have access to a regular telephone or
7  satellite phone there?
8      MR. VEYS:  Yes, I do.
9      THE COURT:  All right.  You're to check in with them at
10 least once a week while you're on home confinement at Pybus
11 Point Lodge and comply with such other directions as they may
12 give you regarding check in and reporting your thereabouts
13 while you're there.
14     MR. HETTENBACH:  Your Honor, may I ask.....
15     THE COURT:  Yes.
16     MR. HETTENBACH:  Could Your Honor just specify if home
17 electronic monitoring is available by the probation office, if
18 it's available.....
19     THE COURT:  If it's available.
20     MR. HETTENBACH:  .....that it be imposed.
21     THE COURT:  Yes.
22     MR. HETTENBACH:  If not available, then the conditions you
23 just specified.
24     THE COURT:  I think that's appropriate and I'll include
25 that in the judgment.  While he is in that interim period going

### Page 9

1  to sport shows, he is to report to his probation officer on a
2  weekly basis.  He's directed to check in in any other community
3  to a probation office.  He's to do so and I'm going to require
4  that he get the permission of the probation officer before he
5  travel to any sport show because I want him to be under strict
6  supervision while he's doing that.  That, it seems to me, is an
7  important segment of his ability to run that business and to
8  sign people up to come to the lodge.
9      I thought about the suggestion that he hire somebody.  I
10 think from the letters he has a reputation and personal contact
11 is important and I don't know that hiring somebody is really
12 going to be sufficient for him to be able to generate the
13 clientele he's going to need to survive out there, so I'm going
14 to allow that.
15     I think that's a really unusual thing.  I'm doing that
16 really for one reason and one reason only and that is that the
17 letters I saw, testimony of Dr. Sperbeck, has really convinced
18 me that Mr. Veys is somebody that I ought to allow some things
19 that I wouldn't allow very many defendants.  So I'm giving you
20 a lot of chances here, Mr. Veys.
21     MR. VEYS:  Thank you.
22     THE COURT:  The conditions of -- well, and he's to be on
23 supervised release for a period of one year.  During that
24 period he is to comply with the standard condition of
25 supervised release.  I'm not going to impose a drug testing

3 (Pages 6 to 9)

Computer Matrix, LLC   Phone - 907-243-0668           jpk@gci.net
700 W. 2nd Ave., Anchorage, AK 99501    Fax    907-243-1473    sahile@gci.net

21425118-ea43-4666-87b0-711a0a0d0cb6
**Exh. B, p. 3 of 6**

## Page 10

1  condition. I don't think that's necessary. I believe Mr. Veys
2  poses a low risk of substance abuse. I'm not going to impose a
3  requirement that he not possess a firearm.
4     He is to report to the probation office within 72 hours of
5  his release from incarceration.
6     He is not to commit any other federal, state or local
7  crime.
8     He is not to leave the judicial district in which he's
9  located without the permission of the court or the probation
10 officer.
11    He's to report to the probation officer and submit a
12 truthful and complete written report within the first five days
13 of each month. He's to answer truthfully all inquiries by the
14 probation officer and follow the instructions of the probation
15 officer.
16    To the extent he has any, he's to support his or her
17 dependents and meet other family responsibilities. It doesn't
18 look like there are any dependents.
19    He is to work regularly at a lawful occupation unless
20 excused by the probation officer for schooling, training or
21 other acceptable reasons.
22    He's to notify the probation officer at least 10 days
23 prior to any change in residence or employment.
24    He's to refrain from excessive use of alcohol and not to
25 purchase, possess, use, distribute or administer any controlled

## Page 11

1  substance or any paraphernalia related to any controlled
2  substances except as prescribed by a physician. I don't think
3  those are things that really apply to you, but they are
4  standard conditions and I am imposing them.
5     He is not to frequent places where controlled substances
6  are illegally sold, used, distributed or administered.
7     He's not to associate with any persons engaged in criminal
8  activities and not to associate with any person convicted of a
9  felony unless granted permission to do so by the probation
10 officer.
11    Permit a probation officer to visit him at any time at
12 home or elsewhere and to permit confiscation of any contraband
13 observed in plane view of the probation officer. He is to
14 notify the probation officer within 72 hours of being arrested
15 or questioned by a law enforcement officer.
16    He is not to enter into any agreement to act as an
17 informer or special agent of a law enforcement agency without
18 the permission of the court or the probation officer.
19    And, as directed by the probation officer, he shall notify
20 third parties of risks that may be occasioned by his criminal
21 record or personal history or characteristics and shall permit
22 the probation officer to make such notifications and to confirm
23 his compliance with that notification requirement.
24    I don't know if that's something they're going to require
25 of you here in terms of clients of your lodge. In other words,

## Page 12

1  tell them that this has happened, tell them they're not to
2  engage in hunting. That's something I'm going to leave up to
3  the probation officer, but I am going to impose some special
4  conditions that relate to hunting. If they want -- if the
5  probation officer thinks it's appropriate for you to make any
6  disclosures of that type during the period of supervised
7  release to your clients about what's going on here, they're
8  going to have the authority to do that.
9     MR. VEYS: We already told all the clients, you know, the
10 guests, that we don't do any hunting out there.
11    MR. COLE: We understand, Your Honor. We've already
12 thought about that.
13    THE COURT: During the period of supervised release there
14 is to be no hunting of any kind conducted by clients of Pybus
15 Point Lodge or anyone who stays overnight at the lodge. And
16 you're not to hunt or accompany anyone hunting during the
17 period of supervised release.
18    You are to submit to a warrantless search of your person,
19 residence and vehicle, personal effects, place of employment or
20 other property by a federal probation or pretrial services
21 officer or other law enforcement officer based upon reasonable
22 suspicion of contraband or a violation of a condition of
23 supervision. Failure to submit to such a search may be grounds
24 for revocation of your supervised release.
25    You are also to permit the probation officer access to any

## Page 13

1  requested financial information, including the authorization to
2  conduct credit checks and you're not to incur any new debts or
3  apply for credit without the approval of the probation officer.
4  The reason for that is there are going to be some financial
5  conditions here. I know that you're subject to some unusual
6  financial circumstances and I think it's important that the
7  probation officer be able to monitor your financial status in
8  order to make sure that you're taking care of your
9  responsibilities.
10    MR. COLE: In that respect, we need to make it clear that
11 we're trying to get his financial matters taken out of his
12 hands, so the probation office has to probably work with his
13 accountant. We've had so many problems in the past that we're
14 trying to take it out of his hands a little bit more.
15    THE COURT: I'm confident the probation office will work
16 with him. If he delegates his financial decision-making, then
17 I'm sure they'll work with the people that are making those
18 decisions.
19    With respect to the monetary penalties I'm required to
20 impose under the plea agreement, I will impose a $14,000 fine,
21 $6,000 in restitution made payable to the state of Alaska and a
22 $25 special assessment, a total of $20,025. That must be paid
23 no later than the expiration of supervised release. Failure to
24 make that payment could result in the revocation of your
25 supervised release. It's a fairly short period of time to make

4 (Pages 10 to 13)

Computer Matrix, LLC    Phone - 907-243-0668                jpk@gci.net
700 W. 2nd Ave., Anchorage, AK 99501    Fax    907-243-1473  sahile@gci.net

21425118-ea43-4666-87b0-711a0a0d0cb6
Exh. B, p. 4 of 6

TRANSCRIPT OF PROCEEDINGS 8/2/2007                    USA v. VEYS
Vol 1                                                 1:06-CR-00003

Page 14

1  those payments.  I don't know that much about your financial
2  status other than you have this very large judgment against you
3  in your bankruptcy, so that's something you're going to have to
4  take care of.
5      MS. SHAW:  Your Honor, may I interject for a moment?
6      THE COURT:  Yes.
7      MS. SHAW:  Should the restitution be paid jointly and
8  severally with Mr. Jairell?
9      THE COURT:  Mr. Hettenbach.
10     MR. HETTENBACH:  Yeah, that would be fine, Your Honor,
11 joint and several.
12     THE COURT:  That will be the order of the court.  I will
13 order that there's to be no interest on those financial
14 penalties since they're to be paid within a fairly short period
15 of time.  Mr. Hettenbach, other things you think should be
16 included in the judgment?
17     MR. HETTENBACH:  No, Your Honor.  I think you covered
18 everything.
19     THE COURT:  Mr. Cole.
20     MR. COLE:  I had a couple questions.  Will he begin on
21 supervised release now until he reports in October?
22     THE COURT:  That would normally be what I would order.
23 Mr. Hettenbach, what do you think of that?
24     MR. HETTENBACH:  I believe he would have to continue on
25 the terms of his release now.  Whatever pre.....

Page 15

1      MS. SHAW:  I think he'll remain on pretrial release and
2  begin supervised release after his service of sentence.
3      THE COURT:  That sounds right.
4      MR. COLE:  Is there an option there?  I mean we'd like to
5  begin the supervised release right now.
6      THE COURT:  I think it ought to go a year from release
7  from incarceration.  Well, the home detention -- the supervised
8  release doesn't run during the period of home detention.
9      MR. COLE:  Right.  That's what I mean.
10     THE COURT:  So there's going to be two months in the
11 middle there.....
12     MR. COLE:  Right.
13     THE COURT:  .....and then 10 months after that.
14     MR. COLE:  What about this period of time from now until
15 October?  That's number one.  Number two, I apologize, he
16 reports on October 1st for one month.  That would be the month
17 of October.
18     THE COURT:  Correct.
19     MR. COLE:  Then he has November and December, which is
20 what we would prefer, and then he would be available January,
21 February and March and then the remaining.....
22     THE COURT:  I think I calculated my months wrong when I
23 said that.
24     MR. COLE:  You did.  But we would ask if it's possible to
25 report for October for his incarceration, November and December

Page 16

1  the two months home confinement, and then January, February and
2  March he'll be going to the lodge in the middle of March, and
3  then beginning his last three months of home confinement when
4  he returns to the lodge.
5      THE COURT:  I want to keep that interim period as short as
6  possible.  That's kind of an unusual thing to break the home
7  confinement in that way and I'm uncomfortable about doing that
8  at all, so I want to make that break as short as possible.  If
9  he's going to the lodge mid March.....
10     MR. COLE:  He could begin as soon as he gets there.
11     THE COURT:  Why don't we make it mid January to mid March,
12 two and a half months before and then two and a half months
13 afterwards, breaking it into two equal pieces, January 15th to
14 March 15th.
15     MR. COLE:  Yeah, that will be fine, mid January to mid
16 March.  There's two months and he'll have -- yeah.
17     THE COURT:  January 15th to March 15th.  Any other
18 questions, Mr. Cole?
19     MR. COLE:  No, that's it.
20     THE COURT:  Mr. Veys, do you understand what you need to
21 do?
22     MR. VEYS:  Pardon me?
23     THE COURT:  Do you understand the things that you need to
24 do?
25     MR. VEYS:  Yes.

Page 17

1      THE COURT:  You know, Mr. Veys, I don't think you're a bad
2  guy.  I think you did a bad thing and I think there needs to be
3  a consequence for that.  I don't expect to see you back here.
4  I don't think you're a guy who's going to go out and commit
5  other crimes.  I do have some concern based on the prior fish
6  and game violations.  And when I read in the letters clients of
7  the lodge saying how careful you were to make sure that people
8  weren't eating king crab that was caught there or doing things
9  like that, you know, a little of that is blunted by the fact
10 that you have that prior fish and game history.
11     MR. VEYS:  Which one is that?
12     THE COURT:  It was a case out of Petersburg in '97.
13     MR. VEYS:  If you knew the rest of the story, that.....
14     THE COURT:  I don't want to hear about it.
15     MR. VEYS:  I'm not going to tell you.  If you knew the
16 truth of it, it would be different.
17     THE COURT:  I have a feeling you've talked to Dr. Sperbeck
18 about these kind of things, but, you know, you took some
19 shortcuts in your dealings with Mr. Jairell in terms of having
20 the right paperwork and having the right permits.  If you do
21 those sort of things again and take those kind of shortcuts,
22 you're going to be back in court.  I don't want that to happen.
23     MR. VEYS:  You'll never see me again.
24     THE COURT:  Is there anything else from the government,
25 Mr. Hettenbach?

5 (Pages 14 to 17)

Computer Matrix, LLC   Phone - 907-243-0668              jpk@gci.net
700 W. 2nd Ave., Anchorage, AK 99501   Fax     907-243-1473    sahile@gci.net

21425118-ea43-4666-87b0-711a0a0d0cb6
**Exh. B, p. 5 of 6**

```
TRANSCRIPT OF PROCEEDINGS 8/2/2007                USA v. VEYS
Vol 1                                             1:06-CR-00003
```

```
                                        Page 18
 1     MR. HETTENBACH:  No, Your Honor.  Just thank you for
 2  getting through this today.  I appreciate it, Your Honor.
 3     MR. VEYS:  Thank you, Your Honor.
 4     MR. COLE:  Yes, Your Honor, we appreciate that, too.  We
 5  know it's been a long day for you and Madame Clerk.  We
 6  appreciate it.
 7     THE COURT:  All right.  Court will be adjourned.
 8     THE CLERK:  All rise.
 9     (Off record)
10  5:39:58
11            *************************
              END OF REQUESTED PORTION
12            *************************
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                                        Page 19
 1            TRANSCRIBER'S CERTIFICATE
 2     I, Joseph Kolasinski, hereby certify that the foregoing
 3  pages numbered 02 through 18 are a true, accurate, and complete
 4  transcript of proceedings in Case No. 1:06-cr-00003-JWS-PMP,
 5  USA v. Veys, transcribed from a copy of an electronic sound
 6  recording to the best of our knowledge and ability.
 7
 8
    _____    _____
 9  DATE                  JOSEPH KOLASINSKI
10
11
12
...
25
```

6 (Pages 18 to 19)

Computer Matrix, LLC   Phone - 907-243-0668        jpk@gci.net
700 W. 2nd Ave., Anchorage, AK 99501   Fax    907-243-1473     sahile@gci.net

21425118-ea43-4666-87b0-711a0a0d0cb6
**Exh. B, p. 6 of 6**